UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **SONDA ELLENBURG,**<br>        Plaintiff,<br><br>v.<br><br>**FRANK BISIGNANO,**<br>**Commissioner of the Social**<br>**Security Administration,**<br>        Defendant. | **Case No. 2:24-cv-890-CLM** |

# MEMORANDUM OPINION

Sonda Ellenburg seeks disability and disability insurance benefits ("DIB") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Ellenburg's application in an opinion written by an Administrative Law Judge ("ALJ").

Ellenburg argues that the ALJ erred by (1) not accounting for her mental limitations in the residual functional capacity assessment, and (2) not properly evaluating the opinion evidence of Dr. Samuel Fleming, a consultative examiner.

The court agrees with Ellenburg that the ALJ erred in not adequately evaluating the opinion evidence from Dr. Fleming. So the court will **REVERSE** the SSA's denial of benefits and **REMAND** this case to the Commissioner.

**I.    STATEMENT OF THE CASE**

   **A.    Ellenburg's disability, as told to the ALJ**

Ellenburg was 53 on the date of the ALJ's hearing decision. (R. 26, 182). She has a limited education and prior work as a nursery school attendant. (R. 24, 42).

At the ALJ hearing, Ellenburg testified that she'd had two back surgeries. (R. 42). According to Ellenburg, one reason she cannot work is that her back hurts all the time. (R. 51). And Ellenburg says she can only stand for 30 to 45 minutes at a time and sit for about an hour before she needs to adjust her position. (R. 52–53). When Ellenburg leaves her house, she uses a walker, and Ellenburg asserts that bending for 15-20 minutes, such as when she's doing the laundry, causes her excruciating pain. (R. 53–54).

As for her anxiety and depression, Ellenburg testified that she doesn't get specific mental health care treatment because her insurance won't cover it. (R. 43). She also testified that she sometimes cannot remember things because she gets really nervous. (R. 45). And Ellenburg says she cannot watch TV because watching things like the news makes her nerves get the best of her. (R. 48–49). While Ellenburg takes Lexapro and Wellbutrin for her depression and anxiety, she says her medication hasn't helped with her symptoms. (R. 46–47).

Ellenburg is married and has an adult daughter. (R. 40). Ellenburg lives with her husband who is at work from 5:00 AM to 3:00 PM Monday through Thursday. (R. 40–41). Ellenburg has a driver's license but doesn't like to drive because of her anxiety. (R. 41). Ellenburg also has a cell phone that she uses to access Facebook. (*Id.*). But Ellenburg's husband goes to the grocery store with her because the crowds make her anxious. (R. 47–48). Ellenburg's husband also helps her cook meals. (R. 48).

### B. Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |

| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
|---|---|---|
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| *Determine Residual Functional Capacity* | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5).

As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

### C. Ellenburg's Application and the ALJ's Decision

The SSA reviews applications for benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

3

Ellenburg applied for DIB and a period of disability in August 2022, claiming that she could not work because she suffers from bulging disc sciatica, high blood pressure, high cholesterol, coronary artery disease, diverticulitis, endometriosis, depression, anxiety, and arthritis. (R. 202). After receiving an initial denial in December 2022, Ellenburg requested an ALJ hearing, which was held in November 2023. The ALJ ultimately issued an opinion denying Ellenburg's claims in January 2024. (R. 11–26).

At Step 1, the ALJ determined that Ellenburg was not engaged in substantial gainful activity and thus her claims would progress to Step 2.

At Step 2, the ALJ determined Ellenburg suffered from the following severe impairments: degenerative disc disease, neuropathy, obesity, anxiety, and depression.

At Step 3, the ALJ found that none of Ellenburg's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. So the ALJ next had to determine Ellenburg's residual functional capacity.

The ALJ determined that Ellenburg had the residual functional capacity to perform a range of light work with these added limitations:

- Ellenburg cannot climb ladders, ropes, or scaffolds.

- Ellenburg can frequently stoop and occasionally kneel, crouch, or crawl.

- Ellenburg cannot be exposed to workplace hazards such as moving mechanical parts and high, exposed places.

- Ellenburg can understand, remember, and carry out detailed, but not complex instructions.

- Ellenburg cannot perform work requiring a specific production rate, such as assembly line work, or work that requires hourly quotas.

- Ellenburg can deal with occasional changes in the work setting.

At Step 4, the ALJ found that Ellenburg could not perform her past relevant work as a nursery school attendant. At Step 5, the ALJ determined that Ellenburg could perform jobs, such as marker, garment sorter, and laundry folder, that exist in significant numbers in the national economy and thus Ellenburg was not disabled under the Social Security Act.

Ellenburg requested an Appeals Council review of the ALJ's decision. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II. STANDARD OF REVIEW

This court's role in reviewing claims brought under the Social Security Act is narrow. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III. LEGAL ANALYSIS

Ellenburg makes two arguments for why the ALJ erred. First, Ellenburg says that the ALJ didn't adequately account for her severe mental impairments in the residual functional capacity finding. Second, Ellenburg asserts that the ALJ did not properly evaluate opinion evidence from Dr. Fleming. The court agrees that the ALJ erred in not adequately addressing the supportability factor when discussing the persuasiveness of Dr. Fleming's opinion. So the court needn't address Ellenburg's argument that the ALJ's residual functional capacity assessment didn't properly account for her mental impairments.

Under the regulations that apply to Ellenburg's DIB application, an ALJ must articulate how persuasive he finds "all the medical opinions and prior administrative findings" in the claimant's record. *See* 20 C.F.R. § 404.1520c(b). ALJs focus on the persuasiveness of an opinion by looking at the opinion's supportability and consistency and ***must explain*** how they considered these two factors. *See* 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but need not, explain how he considered other factors, such as the medical source's relationship with the claimant and specialization, when assessing a medical opinion. *See id.* Under the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions will be." 20 C.F.R. § 404.1520c(c)(1). Under the consistency factor, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

*1. Background*: Dr. Fleming is a clinical neuropsychologist who performed a consultative examination of Ellenburg in April 2023. (R. 484). In Dr. Fleming's report, he stated that Ellenburg told him that she'd suffered significant problems with anxiety for 10 years, does not want to leave the house, cannot do housework, has difficulty sleeping, and is restless throughout the night. (R. 486).

6

During the exam, Ellenburg was cooperative and well motivated, and Dr. Fleming did not note any unusual mannerisms or motor activity. (R. 487). Ellenburg was also oriented to person, place, time, and situation. (*Id.*). But Ellenburg's concentration and attention were deficient as she could not perform serial sevens, count backwards from 20 to 1, or solve a simple multiplication problem. (*Id.*). Ellenburg's immediate recall of digits was also deficient (3 digits forward, 3 digits backward). (R. 488). But Ellenburg's immediate recall of objects, recent memory, and remote memory were all adequate. (*Id.*).

Ellenburg's general fund of information was marginally deficient. (*Id.*). Ellenburg knew the name of the President but could not tell Fleming how many weeks there are in a year. (*Id.*). Fleming found that Ellenburg's abstraction abilities were marginally deficient because while she could tell him about the similarities between an orange and a banana, she could not explain the saying "two wrongs don't make a right." (*Id.*). Ellenburg's thought process showed no evidence of blocking, muteness, repetitions, flight of ideas, loosening of associations, tangentiality, circumstantiality, or confusion. (*Id.*). And Ellenburg's thought content showed no evidence of hallucinations, delusions, ideas of reference, or phobias. (*Id.*). Though Ellenburg said she has an obsession about counting things. (*Id.*).

Dr. Fleming found Ellenburg's judgment and insight were adequate as she acknowledged her emotional problems and accepted responsibility for these problems. (*Id.*). Dr. Fleming also found that Ellenburg's affect was appropriate and estimated that Ellenburg was functioning in the average range of intellectual abilities. (*Id.*). Dr. Fleming then diagnosed Ellenburg with generalized anxiety disorder; major depression, recurrent, moderate; and dependent personality disorder. (R. 489).

Dr. Fleming said Ellenburg had a mild limitation in her (a) ability to manage basic self-care; (b) ability to maintain socially appropriate appearance, behavior, and other aspects of social interaction in a workplace; and (c) ability to manage her finances. (R. 485). Dr. Fleming found Ellenburg had moderate limitations in her ability to (a) understand,

carry out, and remember short, simple 1-to 2-step instructions; (b) maintain attention / concentration and pace for periods of at least 2 hours; (c) maintain a regular schedule with appropriate punctuality; and (d) seek and accept appropriately instructions and criticism from supervisors. (*Id.*). Dr. Fleming stated Ellenburg had markedly severe limitations in her ability to (a) maintain regular work attendance without missing more than 1-2 days per month due to psychological signs or symptoms; and (b) sustain an ordinary work routine without the need for special supervision. (*Id.*).

Dr. Fleming concluded his report by stating that Ellenburg does not have a good prognosis as she continues to experience significant problems with anxiety and depression. (R. 488). Dr. Fleming then added three final comments (1) Ellenburg is not capable of interacting appropriately with supervisors or coworkers, (2) Ellenburg is capable of understanding and carrying out simple instructions but would have difficulty remembering them, and (3) Ellenburg can manage her financial benefits. (*Id.*).

The ALJ found Dr. Fleming's opinion evidence unpersuasive, stating that "Dr. Fleming's findings and recommended limitations of this examination are not supported by any other evidence in the file as discussed in detail herein." (R. 23). The ALJ then cited records from Ellenburg's treating physicians, asserting that contrary to Dr. Fleming's opinion, they showed "overall normal mental examinations . . . and that [Ellenburg's] anxiety and depression have been well controlled with conservative treatment with prescription medications through her primary care physician, but not a mental health specialist." (*Id.*). The ALJ also said Dr. Fleming's opinion contradicted Ellenburg's testimony about her daily activities, including her statements that she stayed at home by herself from 5:00 am to 3:00 pm Monday through Thursday and that she could go grocery shopping with her husband. (*Id.*). Finally, the ALJ found "the facts and symptoms on which [Dr. Fleming's] report is based appears to come almost exclusively from subjective information obtained from the claimant during this one time examination." (*Id.*).

*2. ALJ's error*: The ALJ's reasoning for why he discounted Dr. Fleming's opinion failed to adequately explain how he considered the supportability factor. Again, an ALJ must explain the extent to which a medical source's opinions are supported by the objective medical evidence and supporting explanations from that medical source. 20 C.F.R. §§ 404.1520c(b)(2), 404.1520c(c)(1). So an ALJ errs when he only addresses an opinion's consistency with medical records from other providers. *See Sands v. O'Malley*, Case No. 4:23-cv-163-CLM, 2024 WL 420137, at *4–5 (N.D. Ala. Feb. 5, 2024).

The evidence the ALJ cited in discounting Dr. Fleming's opinion were medical records from Ellenburg's treating physicians and Ellenburg's hearing testimony about her daily activities. (*See* R. 23). While the ALJ's discussion of this evidence may have satisfied the ALJ's duty to evaluate the consistency factor, it doesn't satisfy the ALJ's duty to explain why Dr. Fleming's objective findings and supporting explanations don't support his opinions. Nor did the ALJ's other statements about Dr. Fleming's opinion satisfy his duty to articulate how he considered supportability. The court agrees with the Commissioner that the ALJ "touch[ed] on the supportability factor" when he asserted that Dr. Fleming's report appeared based almost exclusively on subjective information obtained from Ellenburg. (Doc. 12, p. 13). But the ALJ doesn't explain ***why*** he concluded that Dr. Fleming based his report on Ellenburg's subjective statements about her impairments. And it's not apparent from the record why the ALJ reached this conclusion.

Besides, in assessing the supportability factor, an ALJ needs to evaluate both the supporting explanations and the objective findings from the medical source who provided the relevant opinion. *See* 20 C.F.R. § 404.1520c(c)(1). And the ALJ didn't discuss any of Dr. Fleming's objective findings in assessing the persuasive of Dr. Fleming's opinions. For example, the ALJ didn't discuss Ellenburg's inability to count backward from 20 to 1, adequate recent memory, or ability to name the President or explain how these examination findings either support or

undermine Dr. Fleming's opinion. Thus, the ALJ did not adequately evaluate the evidence relevant to the supportability factor.

*3. Error not harmless*: The ALJ's error was not harmless. Because the ALJ didn't adequately explain how he assessed the supportability factor, the court cannot tell whether substantial evidence supports the ALJ's decision to discount Dr. Fleming's opinion. *See Mills v. Astrue*, 226 F. App'x 926, 931 (11th Cir. 2007) (Re-weighing the evidence "would invade[ ] the province of the ALJ."). And a reasonable person who found Dr. Fleming's opinion persuasive may have found that Ellenburg was disabled. In fact, one of Dr. Fleming's opinions was that Ellenburg had a markedly severe limitation in the ability to sustain an ordinary work routine without the need for special supervision. (R. 485). And in response to a question from Ellenburg's attorney, the vocational expert testified that a hypothetical individual who could not sustain an ordinary work routine without the need for special supervision could not perform the jobs that the ALJ found Ellenburg could perform at Step 5. (R. 57). So if after properly applying the supportability factor, the ALJ found Dr. Fleming's opinions persuasive, the ALJ may have found Ellenburg disabled. The court will thus remand this case to the Commissioner for the ALJ to re-evaluate Dr. Fleming's opinion evidence.

—

In remanding this case for reconsideration of Dr. Fleming's opinion, the court is not holding that the ALJ must find Dr. Fleming's opinion persuasive. Rather, the court is merely requiring the ALJ to explain how he considered both the supportability and consistency factors as the SSA's regulations require.

As stated, because the court is remanding this case for reconsideration of Dr. Fleming's opinion evidence, the court needn't address Ellenburg's argument that the residual functional capacity assessment didn't adequately address her mental impairments. But the court notes that while an ALJ's Paragraph B analysis at Steps 2 and 3 "is distinct from the more detailed inquiry as to a claimant's" residual

10

functional capacity, the ALJ "is still required to account for a claimant's moderate limitation in the area of concentration, persistence, or pace in a hypothetical posed to the" vocational expert. *See Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1325 (11th Cir. 2021). So on remand the ALJ may wish to explain whether Ellenburg's ability to work is unaffected by her moderate limitation in concentrating, persisting, or maintaining pace or how the limitations in the hypothetical question to the vocational expert either explicitly or implicitly account for this limitation. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180–81 (11th Cir. 2011).

## IV.  CONCLUSION

For the reasons stated above, the court will **REVERSE** the SSA's denial of benefits and **REMAND** this case to the Commissioner. The court will enter a separate final order that closes this case.

**Done** on July 1, 2025.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE